IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06-CR-175-HDC |
| vs. ) | |
| ) | |
| FABIAN PASILLAS-CASTANON, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter came before the Court for an evidentiary hearing on December 11, 2006, on defendant's motion to suppress evidence. [Dkt. # 20]. The defendant Fabian Pasillas-Castanon was charged on October 4, 2006, in a one count indictment with Fraud and Misuse of Visas, Permits and Other Documents in violation of 18 U.S.C. § 1546(a). In his motion to suppress filed on November 17, 2006, the defendant requests suppression of all his statements and the evidence obtained by the Tulsa Police Department or the Immigration and Customs Enforcement Agents during a traffic stop, which occurred on August 5, 2006.

In support of his motion to suppress, the defendant contends that Tulsa Police Officers stopped a vehicle in which he was a passenger and then detained him longer than necessary solely to permit immigration authorities to arrive at the scene. The defendant contends that his detention was an unlawful exercise of power by the Tulsa Police officers. The defendant contends that the Tulsa police were acting in the capacity of immigration officers, which requires special training and an agreement between the state and the U.S. Attorney General. The defendant further contends that the Tulsa Police Officers who detained him were not certified immigration officers.

The facts in this case relevant to Fabian Pasillas-Castanon's motion to suppress are essentially undisputed. Therefore the Court must properly apply the facts and applicable law to determine the issued raised by the defendant. From a review of the pleadings, testimony, exhibits, arguments of counsel and applicable law, the Court finds and concludes as follows.

## FINDINGS OF FACT

1. Leland Ashley has been a Tulsa police officer for over eight years. For the past two years he has been a detective assigned to the Special Gang Unit. On August 5, 2006, Officer Ashley was on duty with "Operation Bullet Trap" which is Tulsa Police Department operation addressing violent crimes and gang activity in the Tulsa area.

2. On August 5, 2006, at approximately 6:00 p.m., Officer Ashley stopped a grey Ford Mustang because the driver failed to signal when making a turn near the 2100 block of South Garnett in Tulsa.

3. There were three occupants in the vehicle, all three were Hispanic males. Two occupants were in the front seat and one in the back seat. The passenger in the back seat appeared to Officer Ashley to be dead or unconscious. He called to his fellow officer, Shawn Hickey, "Have a person down."

4. Officer Ashley then asked the driver if he had any identification. The driver indicated he did by shaking his head in the affirmative. Officer Ashley retrieved the driver's identification.

5. Defendant Fabian Pasillas-Castanon was the front seat passenger in the vehicle. The driver spoke only rudimentary English and the two passengers, including the defendant Fabian, appeared to only speak Spanish.

6. Officer Hickey asked defendant Fabian Pasillas-Castanon for identification. Fabian produced the green card from his back pocket.

7. The officers handcuffed both the driver and defendant Fabian for safety reasons and to investigate the condition of the back seat passenger. Officer Ashley determined that the back seat passenger was extremely intoxicated, but alive.

8. Neither Officer Ashley nor Officer Hicks speak nor understand the Spanish language. In order to communicate with the occupants, Officer Hickey contacted his corporal and advised him of the traffic stop and asked him to advise Special Agent Van Stephens of Immigration and Customs Enforcement (ICE) that they needed assistance communicating in Spanish. Officer Ashley knew Special Agent Van Stephens spoke Spanish, and he knew that he was in the vicinity as part of Operation Bullet Trap.

9. Officer Ashley testified he needed Special Agent Van Stephens' assistance in running the computer check on the occupants because he did not know how to enter the occupants' hyphenated Spanish names into the computer network and to communicate with them to determine valid drivers licenses, ownership of the vehicle, and vehicle registration.

10. Special Agent Van Stephens testified that one of his functions as part of Operation Bullet Trap is to assist local officers with the language barrier in their communications with Spanish speaking persons. Special Agent Van Stephens arrived at the traffic stop within 5 to10 minutes after being contacted by Officer Hickey while Officer Ashley was still running computer checks on the occupants of the car.

11. The driver was unable to produce a valid driver's licence. Neither Fabian Pasillas-Castanon nor the other passenger had a valid drivers license. Officer Ashley directed that a tow

truck be notified since none of the occupants could lawfully drive the vehicle from the scene of the traffic stop.

12. Officers Ashley and Hickey were unable to determine whether the green cards were valid because they have no specialized training into immigration matters. The officers gave the green cards to Special Agent Van Stephens. Special Agent Stephens identified the occupants for Officer Ashley and determined the three men were brothers.

13. Special Agent Van Stephens determined from the face of the green cards that they were fraudulent. Special Agent Van Stephens confirmed this fact by contacting the ICE Enforcement Center by telephone. He was advised that the Alien Registration numbers appearing on all three green cards were not in the ICE data bank. From this information, Agent Stephens reasonably suspected that all three occupants were illegally in the United States.

14. After Officer Ashley ran criminal checks on the occupants and on the vehicle, the driver, Alvaro Pasillas-Castanon, was taken into custody by the Tulsa Police on outstanding warrants and taken to the Tulsa County Jail. Fabian Pasillas-Castanon and Angel Pasillas-Castanon were taken into ICE administrative custody by Special Agent Van Stephens as aliens illegally in the United States and transported to the Oklahoma County Jail for administrative deportation proceedings.

15. The driver Alvaro Pasillas-Castanon was not charged with any traffic violations and no traffic report was generated at the scene of the traffic stop.

16. On September 13, 2006, the United States filed a complaint against Fabian Pasillas-Castanon charging him with possession of a fraudulent green card. An arrest warrant for Fabian Pasillas-Castanon was issued on that same date.

17. On November 1, 2006, AUSA Tim Faerber contacted Officer Ashley to generate a traffic report. Officer Ashley prepared the traffic report on November 2, 2006.

## CONCLUSIONS OF LAW

The Court finds and concludes that Officers Ashley and Hickey acted within their authority as Tulsa police officers in conducting the traffic stop of the defendant's vehicle for failure to signal when turning, which is a violation of 47 Okla. Stat. § 11-604. The police officers also acted within their lawful authority in requesting a driver's license from the driver and identification from the passengers. "During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and the driver, and issue a citation. The detaining officer may also question the vehicle's occupants regarding their identities, travel plans, and ownership of the vehicle." *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003). An officer may detain the occupants for further questioning if the officer has reasonable suspicion that illegal activity has occurred or is occurring. *Id*.

The Court finds and concludes that Officer Ashley lawfully detained the occupants, including defendant Fabian Pasillas-Castanon, to allow a Spanish speaking officer to arrive at the scene. The Court finds credible Officer Ashley's testimony that he contacted Special Agent Van Stephens because he needed assistance in communicating in Spanish. The detention of the occupants was brief. Agent Van Stephens arrived within 5 to 10 minutes while Officer Ashley was running the computer check on the vehicle and still gathering information on the occupants. The Court finds that Special Agent Van Stephens' participation in the traffic stop was reasonably related to the stop and was within the scope of the stop. In *United States v. Martinez*, 983 F.2d 968 (10th Cir. 1992) the court stated that police officers were justified in detaining occupants of a vehicle longer than a

routine traffic stop in order to contact a Spanish speaking police officer to assist them with communicating with a Hispanic to determine whether the vehicle involved in the traffic stop was stolen. In *Martinez,* the Spanish speaking officer arrived within 10 minutes to assist the other officers.

Further, the Court finds that Officer Hickey's requesting and obtaining Fabian Pasillas-Castanon green card did not constitute an unreasonable search and seizure. The officers properly sought and obtained identification documents from the occupants. In *United States v. Esparsa-Mendoza,* 386 F.3d 953, 958 (10th Cir. 2004), the Tenth Circuit states, "police officers may approach citizens, ask them questions and ask to see identification without implicating the Fourth Amendment's prohibition against unreasonable searches and seizures." Further, the Court finds that defendant Fabian voluntarily produced his green card and gave it to Officer Hickey as his identification.

The Court further finds that Special Agent Van Stephens had reasonable grounds to believe that defendant Fabian Pasillas-Castanon was illegally in the United States because his green card was fraudulent on its face. It was within the scope and authority of ICE agents to identify and detain persons whom they reasonably believe are unlawfully in the United States. The fact Special Agent Van Stephens made this independent determination is not evidence that the Tulsa Police Officers were acting outside their authority or acting in the capacity of immigration officers in turning the green cards over to Special Agent Van Stephens. There was nothing improper in Officers Ashley and Hickey making a routine traffic stop at a time that they were also assisting state and federal agents in Operation Bullet Trap. Police officers have the authority to initiate a traffic stop when a violation occurs in their presence. The fact that the officers contacted Special Agent

Van Stephens who determined that the occupants were illegal aliens did not constitute an unlawful pooling of information, which would render the acts of the Tulsa police outside the scope of their authority.  In *United States v. Salinas-Calderon*, 728 F.2d 1298 (10th Cir. 1984) a Kansas Highway Patrol Officer stopped a Ford truck for driving erratically on the highway outside Dodge City.  The officer was unable to communicate with the driver who appeared intoxicated or perhaps drowsy.  There were six occupants in the truck.  Only the front passenger spoke English.   When the officer asked the driver for his driver's license, he did not respond.  It became apparent to the officer that the driver did not understand English.  At trial the officer admitted that he did not know what to do so he telephoned the Immigration Service Office in Garden City.  The officer was advised to escort the occupants of the Ford truck to Dodge City.  The driver of the vehicle was placed on the telephone with the Immigration Officer.  After questioning the driver, the Immigration Officer determined that all six of the men were in the country illegally.  On appeal the defendant argued that the state trooper did not have the authority to detain the passengers while he inquired into federal immigration matters, and further, his question about the defendant's green card was based on a mere hunch.  The Tenth Circuit held that these arguments were without merit.  "A state trooper has general investigatory authority to inquire into possible immigration violations.  Moreover, the troopers' question about the green card was reasonable under the circumstances, and thus lawful."  *Id.* at 1301 f. 3.  Thus, the Court finds that the Tulsa Police officers properly seized the defendant's green card and properly surrendered his green card to Special Agent Van Stephens.

The government has advised the Court and the defendant that it does not intend to offer into evidence any statement made by Fabian Pasillas-Castanon during the traffic stop or at any other time

prior to the defendant having been advised of his *Miranda* rights.  Government's assurance in this regard renders moot defendant's motion to suppress statements.

ACCORDINGLY, defendant Fabian Pasillas-Castanon's motion to suppress the search and seizure of his green card, during the traffic stop on August 5, 2006, is hereby DENIED.  The stipulation entered of record by the government renders moot defendant's motion to suppress statements.

IT IS SO ORDERED this 5th day of February, 2007.

HONORABLE H. DALE COOK
Senior United States District Judge