IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06-CR-175-HDC |
| vs. ) | |
| ) | |
| FABIAN PASILLAS-CASTANON, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter came before the Court for an evidentiary hearing on December 11, 2006, and January 25, 2007, on defendant's motion to dismiss [Dkt. # 19], as modified and amended on January 3, 2007. [Dkt. # 29]. At the conclusion of the hearing the Court announced its decision from the bench, denying the defendant's motion to dismiss, as amended. The Court now enters written findings of fact and conclusions of law in support of its January 25, 2007 decision.

The defendant Fabian Pasillas-Castanon was charged in this Court on October 4, 2006, by a one count indictment with Fraud and Misuse of Visas, Permits and Other Documents in violation of 18 U.S.C. § 1546(a). This statutory provision includes the offense of an alien in possession of a false or fraudulent green card, the terminology commonly used by the parties in their pleadings and at the evidentiary hearing.

In his motion to dismiss, the defendant initially argued that Special Agent James Van Stephens, with Immigration Customs Enforcement Agency (ICE), following a warrantless arrest, took custody of defendant Fabian Pasillas on the criminal charge for which he was indicted - possession of a fraudulent green card. The defendant further claimed that ICE agents unlawfully detained him for 60 days denying him the right to counsel, right to a speedy trial and the right to be

taken before a judicial officer for a determination of probable cause in violation of the due process clause of the Fourth Amendment. In his amended motion to dismiss, the defendant claimed that Special Agent Stephens unlawfully held him in custody for sixty days solely for the purpose of gathering evidence to present to the U.S. Attorney's office. Specifically, the defendant contends that Special Agent Stephens deliberately denied the defendant a right to counsel and a right to an expedited redetermination of his custody status before an immigration judge in order for Special Agent Stephens to gather evidence to present to the U.S. Attorney's office to effectuate Fabian Pasillas' criminal prosecution. In so doing, the defendant contends that the ICE agent unlawfully acted as agents of the U.S. Attorney's office in a criminal prosecution in circumvention of federal law and in denial of the defendant's right to a speedy trial.

The facts in this case regarding defendant's amended motion to dismiss are contested by the parties. The parties appear to agree on the applicable law, as both parties cite and rely on the same federal cases. Therefore, from a review of the pleadings, testimony, exhibits, arguments of counsel and applicable law, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.      On August 5, 2006, at approximately 6:00 p.m., Tulsa Police Detective Leland Ashley and his partner Detective Shawn Hickey stopped a grey Ford Mustang for failure of the driver to signal when making a turn near the 2100 block of South Garnett in Tulsa. Defendant Fabian Pasillas-Castanon was a passenger in the stopped vehicle.

2.      The traffic stop was within the scope of the authority and responsibilities of Officers Ashley and Hickey. At the time, both detectives were also on patrol participating in "Operation

Bullet Trap" which is a Tulsa Police Department operation addressing violent crimes and gang activity in the Tulsa area.

3. The Court finds that the traffic stop by the Tulsa Police Officers was initiated because the driver of the grey Mustang committed a traffic violation in the officers' presence. Failure to signal when turning is a violation of 47 Okla. Stat. § 11-604. Contrary to defendant's assertion, there is no evidence that the traffic stop was initiated by the Tulsa Police to enforce the immigration laws.

4. The three occupants of the vehicle, including the defendant, were male Hispanics. The driver understood only limited English. Defendant Fabian Pasillas-Castanon and the other passenger spoke and understood only Spanish. All three occupants had alien green cards. Defendant Fabian Pasillas-Castanon voluntarily produced his green card for identification.

5. In order to communicate with the occupants of the vehicle, Detective Hickey radioed his corporal, advised him of the traffic stop and requested him to ask Special Agent James Van Stephens with ICE to come the scene of the traffic stop to assist the police officers with interpreting and communicating in Spanish with the occupants. Officer Ashley knew Special Agent Stephens spoke Spanish, and he knew that he was in the vicinity as part of Operation Bullet Trap.

6. Officer Ashley testified he needed Special Agent Stephens' assistance in running the computer check on the occupants because he did not know how to enter the occupants' hyphenated Spanish names into the computer network and to communicate with them to determine valid drivers licenses, ownership of the vehicle, and vehicle registration.

7. Special Agent Stephens testified that one of his functions as part of Operation Bullet Trap is to assist local officers with the language barrier in their communications with Spanish

speaking persons. Special Agent Van Stephens arrived at the traffic stop within 5 to 10 minutes after being contacted by Officer Hickey while Officer Ashley was still running computer checks on the occupants of the car.

8. The driver was unable to produce a valid driver's license. Neither Fabian Pasillas-Castanon nor the other passenger had a valid drivers license. Officers Ashley and Hickey were unable to determine whether the green cards were valid because they have no specialized training in immigration matters. The green cards were given to Special Agent Stephens.

9. From the face of the green card, Special Agent Stephens determined that the green card was fraudulent. To confirm his belief, Special Agent Stephens telephoned the ICE Law Enforcement Support Center to run a records checks on the green cards. Special Agent Stephens was informed that the alien registration number on Fabian Pasillas-Castanon's green card did not exist in ICE's data bank. Upon further investigation, Special Agent Stephens determined that the three males were brothers, they were illegally in the United States, and they were members of the Sureno 13 Street Gang. Defendant Fabian Pasillas-Castanon admitted to Special Agent Stephens that he was in the United States illegally.

10. The Court finds that at the scene of traffic stop, Special Agent Stephens had reasonable suspicion that Fabian Pasillas-Castanon and his two brothers were illegally in the United States.

11. The Court further finds that the Tulsa Police Officers were not acting as agents for ICE. The evidence clearly established that Tulsa Police are not trained on immigration law nor are they trained to detect illegal green cards.

12. The Court finds that Special Agent Stephens took defendant Fabian Pasillas-Castanon under administrative arrest for the civil offense of being illegally in the United States for the purpose of commencing administrative removal and deportation proceedings.

13. The Court further finds that the Tulsa Police Detectives did not place an "Ice hold" on defendant Fabian Pasillas-Castanon. The "ICE hold" was placed by Special Agent Stephens who was properly acting within the scope of his authority as an ICE agent.

14. Special Agent Stephens initially transported Fabian Pasillas-Castanon to the Tulsa County Jail, where he was held from 7:00 p.m. until 2:00 a.m. when Special Agent Stephens completed his duties in Tulsa County. At 2:00 a.m., Fabian Pasillas-Castanon was transported to the Oklahoma County Jail, which is a contract affiliate of ICE, for administrative screening in the removal proceedings.

15. On August 8, 2006, defendant Fabian Pasillas-Castanon was issued a Notice to Appear, by Jeffrey Perkins, Acting Group Supervisor with ICE in Oklahoma City. The Notice to Appear specifically charged Fabian Pasillas-Castanon with being "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" in violation of 212 (a)(6)(A)(I) of the Immigration and Nationality Act. (Defendant's Hearing Exhibit 3).

16. Senior Special Agent David Munson, in consultation with Field Officer Special Agent Stephens, executed a Warrant for Arrest of defendant Fabian Pasillas-Castanon and made the determination that that the defendant would initially be detained in the custody of ICE. (Defendant's Hearing Exhibits 4 and 6). The evidence establishes and the Court so finds, that the

5

custody determination was made based on defendant Fabian Pasillas-Castanon's admission that he was illegally in the United States and because of his affiliation with Sureno 13 Street Gang.

17.     The evidence shows defendant Fabian Pasillas-Castanon requested a redetermination by an immigration judge of the initial custody decision made by ICE Special Agents Munson and Stephens. The evidence also shows that defendant Fabian Pasillas-Castanon requested a "prompt hearing." (Defendant's Hearing Exhibit 6). No evidence was offered that Fabian Pasillas-Castanon was denied the right to contact an attorney to represent him in the civil deportation proceedings.

18.     As part of the screening process, it is the custom and practice of ICE processing agents to provide a "List of Free Legal Service Providers For Oklahoma City" (Defendant's Hearing Exhibit 10) to persons subject to ICE detention. Although the form was not placed in Fabian Pasillas-Castanon's administrative file (commonly referred to as an "A-File"), the absence of the form from the file is not evidence that the form was not given directly to Fabian Pasillas-Castanon or that the standard and customary practice was not followed in this case.

19.     On August 17, 2006, Fabian Pasillas-Castanon's A-File was transmitted from ICE's Oklahoma City office to the ICE trial attorneys in Dallas, Texas. The evidence establishes and the Court so finds, that once Fabian Pasillas-Castanon's A-file was transmitted to Dallas, Senior Special Agent Munson had no further participation in Fabian Pasillas Castanon's deportation proceeding.

20.     The evidence established and the Court so finds that Fabian Pasillas-Castanon's A-File was marked "Prosecution" to inform the ICE deportation offices that this alien possibly may be subject to prosecution and not to remove or deport the alien until the U.S. Attorney's office is notified. The Court finds that this is a routine custom and practice of the ICE deportation procedure.

In this instance, Fabian Pasillas-Castanon was subject to separate charges by more than one division of the federal law enforcement system, and the notation on Fabian Pasillas-Castanon's A-File was solely for tracking purposes.

21.     The evidence established that the Dallas ICE lawyers reviewed Fabian Pasillas-Castanon's A-File for legal sufficiency and then forwarded it to the Immigration Court. The Immigration Court reviewed Fabian Pasillas-Castanon's A-File on September 5, 2006, and set an initial hearing date for September 25, 2006. Fabian Pasillas-Castanon's deportation hearing was set for October 6, 2006.

22.     The Court finds credible the testimony of ICE Deportation Officer Joe Ballard that, based on his experience, the delay in Fabian Pasillas-Castanon's administrative deportation case was directly attributed to the work load in the immigration courts in Dallas. Further, that even though Fabian Pasillas-Castanon requested a prompt redetermination of his custody status, the delay in reviewing his request was not unusual.

23.     The factual statement supporting defendant Fabian Pasillas-Castanon's arrest and detention by ICE was furnished by Special Agent Stephens and is shown on Defendant's Hearing Exhibit 5. On August 8, 2006, Special Agent Stephens telephoned Doug Horn, Chief of the Criminal Division in the U.S. Attorney's Office in this judicial district. Special Agent Stephens informed AUSA Horn that their agency had three foreign nationals in possession of false green cards who were Sureno 13 Street Gang members, and wanted to know if the U.S. Attorney's office was interested in prosecuting the case. AUSA Horn gave a verbal initial acceptance of the case for prosecution and requested Special Agent Stephens to go ahead and "work it up" which Agent Stephens understood was authorization for him to obtain documented evidence to support criminal

prosecution for the defendant's possession of a false green card. AUSA Horn assigned AUSA Tim Faerber to the case and a "blue sheet" was opened. A "blue sheet" is used to track the time spent by a AUSA on a "matter" under investigation.

24.     Special Agent Stephens sent Fabian Pasillas-Castanon's green card to the ICE forensic lab in McLean, Virginia for verification of its falsification and for finger print analysis.

25.     The evidence establishes and the Court so finds, that after August 8, 2006, Special Agent Stephens had no further participation in Fabian Pasillas-Castanon's civil administrative deportation proceeding.

26.     On August 31, 2006, the forensic reports on Fabian Pasillas-Castanon's green card and finger prints were received by Special Agent Stephens and forwarded to AUSA Tim Faerber as evidence supporting prosecution.

27.     On September 5, 2006, Special Agent Stephens prepared a field report (Defendant's Exhibit 2) detailing his investigation into the three Pasillas-Castanon brothers' possession of false green cards and sent the report to AUSA Tim Faerber. The ending paragraph of his report reads:

> Angel and Fabian PASILLO-Castanon are currently being held in ICE custody pending removal proceedings. Alvaro PASILLAS-Castanon is currently being held in Tulsa, Oklahoma County Jail on his outstanding warrants with the immigration detainer that was lodged by the reporting agent.

28.     The evidence establishes and the Court so finds that on September 5, 2006, defendant Fabian Pasillas-Castanon was being held in ICE custody pending removal and deportation proceedings. The evidence clearly establishes that Fabian Pasillas-Castanon was not arrested, charged or being detained at the request of federal prosecutors or on pending criminal charges.

29. On September 13, 2006, a criminal complaint was filed in this district by the U.S. Attorney's office against Fabian Pasillas-Castanon for possession of a false green card. The Indictment was filed on October 4, 2006.

30. Fabian Pasillas-Castanon was arrested on October 4, 2006, on the criminal charges in this case and removed from ICE custody by the U.S. Marshals. Fabian Pasillas-Castanon's initial appearance and arraignment in this case was held before the magistrate judge in this district on October 16, 2006.

31. On October 6, 2006, Fabian Pasillas-Castanon's A-File was administratively closed by the Immigration Court because the defendant had been transferred to the custody of the U.S. Marshal Service. Fabian Pasillas-Castanon's A-file and deportation proceeding is subject to being reopened at the request of ICE officials.

## CONCLUSIONS OF LAW

Based on the clear weight of the evidence the Court holds that Special Agent James Van Stephens, Senior Special Agent David Munson, Acting Group Supervisor Jeffrey Perkins, ICE Deportation Officer Joe Ballard, nor any other ICE officer or personnel engaged in any conduct to delay, interfere or stop Fabian Pasillas-Castanon from having a prompt redetermination of his custody status before an immigration judge. Further, the Court holds that neither AUSA Doug Horn or AUSA Tim Faerber engaged in any conduct to delay, interfere or stop Fabian Pasillas-Castanon from having a prompt redetermination of his custody status before an immigration judge. Any such delay was directly caused by the backlog and heavy case load of the Immigration Court.

Further, the Court holds that the delay or irregularity, if any, in the ICE administrative deportation proceeding is irrelevant to the separate criminal proceeding initiated in this Court. There

was no evidence offered that Fabian Pasillas-Castanon was illegally detained by federal prosecutors in order to collect evidence to file federal charges. Whether Fabian Pasillas-Castanon was improperly delayed before the civil administrative proceeding is irrelevant because he was timely brought before the federal magistrate following his arrest and indictment on federal criminal charges. The mere fact that the ICE field officer, Special Agent Stephens gave notice to the U.S. Attorney's office of possible criminal conduct by Fabian Pasillas-Castanon did not require Fabian to be brought before a federal magistrate for arraignment at that time. The evidence clearly establishes and the Court so holds that there were dual proceedings involving separate and distinct charges. It is not a proper issue before this Court to determine whether the immigration proceeding was faulty. Clearly, even if it was, that proceeding would not prohibit or restrict the U.S. Attorney's office from proceeding on the issuance and prosecution of the indictment.

On page 2 of the Record of Deportation (Defendant's Hearing Exhibit 5), field officer, Special Agent Stephens clearly indicates that at the time of processing the deportation proceeding, he was requesting criminal prosecution for Fabian Pasillas-Castanon's possession of a false green card. A request and/or referral for criminal prosecution by a federal investigative administrative agent is proper and within the scope of the agent's authority and responsibilities.

The evidence also establishes, and the Court so holds, that once Special Agents Stephens and Munson completed the administrative screening process for Fabian Pasillas-Castanon, the civil proceeding was out of their hands. Following completion of his role in the administrative screening process, Special Agent Stephens collected the evidence requested by AUSA Faerber. He had no further involvement in the decision whether Fabian Pasillas-Castanon would face criminal prosecution.

The weakness in defendant's argument in his amended motion to dismiss is that he is attempting to use ICE's decision to proceed with civil deportation proceedings as merely a ruse to unlawfully detain him solely to allow the U.S. Attorney's office to investigate whether it had sufficient evidence to file an indictment charging him with possession of a fraudulent green card. The defendant argues, in essence, that the ICE had no intention of proceeding with the civil deportation proceedings in the event the federal prosecutor decided not to file separate charges on the false green card. To support this claim, the defendant argues that after the issuance of the civil arrest warrant and his detention, he filed a request for a bond redetermination. The defendant contends that the ICE deliberately did not act upon his request for bond within the purported three day limit set forth in the their regulations because the ICE was detaining him solely to allow the federal prosecutors to seek an indictment against him. The evidence established, and the Court so holds, that the ICE deportation process was proceeding in good faith. There is no evidence that the ICE proceeding was a ruse to unlawfully detain Fabian to aid in federal prosecution in violation of the Speedy Trial Act.

As a general rule, the provisions of the Speedy Trial Act do not apply to civil detention, which includes deportation proceedings. *United States v. De La Pena-Juarez*, 214 F.3d 594, 597-98 (5th Cir. 2000). The Speedy Trial Act may be triggered by civil detention only when federal prosecutors collude with civil or state officials to detain a defendant as a mere ruse for later criminal prosecution. *Id.* The rationale behind the exception is to prevent federal prosecutors from colluding with civil or state authorities solely for the purpose of bypassing the requirements of the Speedy Trial Act. *De La Pena-Juarez*, 214 F.3d at 598 and *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993). There must be evidence that the federal prosecutor acted in bad faith or that the

ICE agents acted in bad faith which would require action on the part of the courts to send a message to deter future bad faith conduct. *Cepeda-Luna,* 989 F.2d at 357. If ICE has a valid reason for detaining the defendant, a ruse is not established. See, *United States v. Ortiz-Lopez*, 24 F.3d 53, 44 (9th Cir. 1994). In *Ortiz-Lopez,* the "ruse exception" did not apply, in part, because the INS had a valid reason to detain the defendant. In *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000) the "ruse exception" did not apply, in part, because the INS actively pursued deportation proceedings against the defendant during his civil detention. The fact that federal prosecutors are aware of, or even involved with, deportation proceedings does not establish collusion. *United States v. Dyer*, 325 F.3d 464, 469 (3rd Cir. 2003). In this case, the ICE had a valid reason to detain Fabian Pasillas-Castanon and the ICE actively pursued his deportation proceeding.

The defendant misstates the facts. Defendant claims that Special Agent Stephens arrested Fabian Pasillas-Castanon for possession of a fraudulent green card. The evidence clearly established that Special Agent Stephens arrested Fabian Pasillas-Castanon for being illegally in the United States and then took him into custody on the civil offense. It was not until the federal prosecutors determined that the green cards were in fact false that the prosecutor issued a criminal warrant for Fabian Pasillas-Castanon's possession of a false green card. The evidence established that the civil deportation proceedings was following its regular course and that nothing unusual occurred in that process unique to Fabian Pasillas-Castanon. The consideration of criminal prosecution was separate from the civil deportation proceeding and it was also proceeding in its regular course.

Further, federal prosecutors did not request the ICE to detain Fabian. The ICE agents did not contact the U.S. Attorney's office until after the administrative screening process was completed

on August 8, 2006. The ICE was going forward with civil deportation proceedings independent of the federal prosecutor's request for information regarding Fabian's green card.

The defendant relies solely on the failure of the civil Immigration Court to act within three days on his request for a bond redetermination as evidence of the ICE's bad faith in unlawfully detaining the defendant. The evidence established that there was no deliberate, intentional effort to deny Fabian a bond redetermination hearing. The evidence is that the scheduling in Immigration Court is often affected by a backlog of cases, or that the failure to schedule a bond hearing may be merely an oversight.

The defendant was charged by complaint approximately one week after the forensic reports were received and charged by indictment within a month. Further, had the federal prosecutors declined to go forward with the criminal charge, the evidence shows that the civil deportation proceeding would have gone forward anyway. Although Fabian Pasillas-Castanon's case was administratively closed, it was subject to being reopened. His administrative case was not dismissed. The fact that the civil deportation case was closed upon filing of the indictment, does not establish bad faith detention for the sole purpose of bypassing the requirements of the Speedy Trial Act. In *United States v. Tejada*, 255 F.3d 1 (1st Cir. 2001), at trial the defendant moved to dismiss his indictment for illegal reentry into the United States on the ground that the government failed to bring him before a magistrate judge within 48 hours following his warrantless arrest. The motion was denied by the district court. The First Circuit affirmed holding that illegal reentry into the United States is a status offense that does not trigger the protections of the Rule requiring that arrested persons be brought before a magistrate without unnecessary delay, until the criminal process has been initiated against the detained alien. Rather, detention for illegal entry is civil in nature and

governed by statute which empowers INS officials to effect a warrantless arrest of any alien who is entering or attempting to enter the United States in violation of the law, and which requires that the detained alien be taken without unnecessary delay for examination before an officer of the INS having authority to examine aliens as to their right to enter or remain in the United States.

Accordingly, based on the evidence and applicable law, it is the order of the Court that the motion to dismiss [Dkt.#19], as amended [Dkt.# 29] filed by the defendant Fabian Pasillas-Castanon is hereby DENIED.

IT IS SO ORDERED this 9th day of February, 2007.

*[signature]*
HONORABLE H. DALE COOK
Senior United States District Judge